IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

MAR 19 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MONICA COSBY, )
)
Petitioner, )
)
vs. )   No. 04C 2077
)
ALYSSA B. WILLIAMS, )   JUDGE MANNING
Warden, Dwight Correctional Center, )
)   MAGISTRATE JUDGE MASON
Respondent, and )
)
THE ATTORNEY GENERAL OF THE )   FILED
STATE OF ILLINOIS, )
)   MAR 19 2004
Additional Respondent. )
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
MAR 23 2004

PETITION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254

Petitioner Monica Cosby, by her attorney, Edwin A. Burnette, Cook County

Public Defender, through Suzanne A. Isaacson, Assistant Public Defender, petitions this

Honorable Court to issue a writ of habeas corpus commanding her release from custody or retrial

or, at a minimum, to grant her an evidentiary hearing, pursuant to 28 U.S.C. § 2254.

In support of this petition, petitioner states the following:

Jurisdiction, Venue and Procedural History

1. Petitioner Monica Cosby is presently incarcerated at the Dwight Correctional

Center, Dwight, Illinois, under Illinois Department of Corrections No. K-87287.

2. Alyssa B. Williams is the warden of the Dwight Correctional Center, and is the

1



person having custody of Monica Cosby.

3. Monica Cosby, along with co-defendant Kmuel King (sometimes called Kevin), was charged with first-degree murder in connection with the 1995 death of King's mother, Bobbie King, under Indictment No. 96 CR 1896 (Circuit Court of Cook County, Chicago, Illinois).

4. Monica Cosby entered a plea of not guilty, and the case proceeded to trial. Monica was represented at trial by attorney William Murphy. The trial was a bench trial. Monica testified at the trial.

5. Monica Cosby was found guilty and was sentenced to consecutive prison terms of 40 years for murder and three years for concealment of a homicidal death. She was found guilty on April 28, 1998. Sentence was imposed on September 23, 1998.

6. Monica appealed to the Appellate Court of Illinois, First District. She was represented by the Office of the State Appellate Defender. Two issues were raised on appeal. It was argued that (1) the 40-year sentence was excessive and (2) the three-year sentence for concealment was improperly ordered to run consecutively to the 40-year sentence.

7. The Appellate Court affirmed the 40-year sentence. The three-year sentence for concealment, however, was ordered to run concurrently to the 40-year sentence. People v. Monica Cosby, No. 1-98-3770 (1st Dist., June 6, 2000). The Appellate Court's order is unpublished pursuant to Illinois Supreme Court Rule 23. A copy is attached hereto as Exhibit A.

8. Following the Appellate Court's order on direct appeal, neither a petition for leave to appeal nor a petition for a writ of certiorari was filed.

9. Pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 et

2

seq., Monica filed a post-conviction petition in the Circuit Court of Cook County on December 26, 2000. The petition was filed by an attorney, Margaret Byrne. A copy of the petition (including its lengthy attachments) is attached hereto as Exhibit B. Among the bases of this petition for a writ of habeas corpus are deprivations of constitutional rights alleged in the post-conviction petition.

10. The circuit court dismissed Monica Cosby's post-conviction petition in a written order, supplemented by remarks in open court, on March 23, 2001. The petition was dismissed without an evidentiary hearing. The dismissal came at the first stage of the Illinois post-conviction process, before the petitioner's right to request discovery accrued. A copy of the written order is attached hereto as Exhibit C. A copy of the transcripts of the proceedings in the circuit court on March 23, 2001, followed by a March 26, 2001 addendum, are attached hereto as Exhibit D.

11. Monica Cosby appealed from the dismissal of her post-conviction petition to the Appellate Court of Illinois, First Judicial District. The Appellate Court affirmed the dismissal of the petition in an unpublished Rule 23 order entered on May 27, 2003. People v. Monica Cosby, No. 1-01-2083 (1st Dist., May 27, 2003) (a copy of which is attached hereto as Exhibit E). A petition for rehearing was filed. It was summarily denied on July 15, 2003 (Exhibit F).

12. On August 15, 2003, Monica Cosby filed a petition for leave to appeal to the Supreme Court of Illinois. It was docketed under Supreme Court No. 96835. The petition for leave to appeal was denied on December 3, 2003 (Exhibit G).

13. Monica Cosby has now exhausted her state court remedies.

3

14. No other post-conviction-type petitions have been filed in state court challenging this conviction, such as *coram nobis* or habeas corpus. Nor have any previous petitions been filed in federal court. Aside from this petition, no legal proceedings are now pending in any court.

15. Monica Cosby's post-conviction petition raised a number of constitutional issues. Among the issues raised was whether the attorney who represented Monica at trial failed to provide her with the effective assistance of counsel, as guaranteed by the sixth and fourteenth amendments, U.S. Const., amends. VI, XIV, and Strickland v. Washington, 466 U.S. 668 (1984), when he (1) failed to move to suppress her inculpatory statement on the ground that it was obtained in violation of her fifth and fourteenth amendment right to counsel and Edwards v. Arizona, 451 U.S. 477 (1981) (¶ 37 et seq.); (2) failed to move to suppress her statement on the ground that it was taken under circumstances that rendered it involuntary within the meaning of the fifth and fourteenth amendments[1] (¶ 56 et seq.); and (3) failed to move to suppress her statement on the ground that it was taken in violation of her fifth and fourteenth amendment right to remain silent[2] (¶ 66 et seq.). U.S. Const., amends. V, VI, XIV. In this petition, Monica also asserts her actual innocence under a mistake-of-fact theory (¶ 79 et seq.).

16. Monica Cosby's due process rights were further violated by the Circuit Court of Cook County and the Appellate Court of Illinois because of the wholly unfounded manner in

---

[1]The fourteenth amendment prohibits state officers from obtaining involuntary confessions and introducing them into evidence. Blackburn v. Alabama, 361 U.S. 199, 205 (1960).

[2]The fifth amendment right to remain silent is applicable to the states through the fourteenth amendment. Malloy v. Hogan, 378 U.S. 1, 3 (1964).

4

which they applied, or misapplied or refused to apply, the Post-Conviction Hearing Act, 725

ILCS 5/122-1 et seq., and the binding court decisions construing it. This erroneous deprivation

of Monica Cosby's right to pursue the post-conviction remedies provided by state law constitutes

a denial of due process of law, in violation of the fourteenth amendment, U.S. Const., amend.

XIV. See ¶ 77 et seq.

### The Facts of the Case: Monica's Arrest and Custodial Interrogation

17. In December 1995, Monica Cosby, along with her three young daughters, was

living in an apartment with her paramour, Kmuel King, and King's mother, Bobbie King. (Trial

Tr. R-35-37). Monica alleged in her post-conviction affidavit that Kmuel King was abusive and

battered her, and she testified that she was very afraid of him. (Exhibit B at 6 (¶ 23); Exhibit B,

Affidavit of Monica Cosby, ¶ 6, 7; Trial Tr. R-174). Neighbor and prosecution witness Carla

Martinez confirmed that Kmuel used to threaten Monica, and "[s]he could never get away from

him." (Trial Tr. O-167).

18. On December 27, 1995, the police, called by a neighbor, found Bobbie King's

deceased body in the neighbor's apartment, concealed in a cart. (Trial Tr. O-256-58).

19. Monica was arrested for murder in connection with Bobbie King's death on

the evening of December 27, 1995. Kmuel King was also arrested. Monica was under the

influence of marijuana and alcohol at the time of her arrest. (Exhibit B at 7, ¶ 28-30).

20. The police first took Monica to the local Rogers Park police station.

Monica's mother learned about the arrest and called Alan Mills, an attorney who had long known

the family, and asked him to go to the station to find out what was going on. (Exhibit B,

Affidavit of Alan Mills, ¶ 3 et seq.). When Mills arrived at the station at 10:00 p.m., he was

5

26. Several hours later, the officer to whom Mills had earlier spoken came back and told Monica that King had just given a statement, saying that it was Monica who had killed his mother. (Affidavit of Monica Cosby, ¶ 18).[3] Monica thought that the officer "seemed like he was trying to help me and thought I should not be blamed for what Kevin did." (Affidavit of Monica Cosby, ¶ 18). He asked her whether she had anything to say. (Affidavit of Monica Cosby, ¶ 18). Monica made a statement. (Affidavit of Monica Cosby, ¶ 19).

27. According to the police report (General Progress Report) attached to Monica's post-conviction petition as "Exhibit Four" (and as part of Exhibit B hereto), Monica made an oral statement to police at 3:00 a.m. The police report states that Monica "wanted to talk to us after being confronted with Kevin's statement." Detective Baldree and two other officers were present for the 3:00 a.m. statement. (Trial Tr. R-21-22).

28. According to the statement, as summarized by the police in the General Progress Report, Monica described Bobbie King's yelling at Monica and Kevin (Kmuel). Monica left the room and Kevin and his mother continued fighting. Kevin closed the bathroom door. Sometime afterward, Kevin told Monica that that he had killed his mother for her and now he was free. The two went into the bathroom, where Bobbie King was lying on the floor. Monica said that her head was bleeding, and "[s]he looked like she was dead." The two put Bobbie King in the bathtub. Monica put some bags of laundry over her body. After Monica and Kevin slept, they returned to the bathroom, and Monica put a clear plastic bag over Bobbie

---

[3]If so, this would be inconsistent with Detective Baldree's testimony as to Kmuel King's 2:10 a.m. statement at Kmuel's trial. According to that statement, some time after Monica said that she wanted his mother dead, Kmuel King physically fought with his mother and punched her in the face. She fell to the bathroom floor, whereupon he put his hands around her neck and strangled her. Then, Monica got a bag and put it over Bobbie King's head. (Tr. P-74, 78-79).

King's face, which Kevin then tied around her neck with a cord. Kevin said that they had to tie her up, and they did so, with Monica cutting some material. They then placed her in a cart and took her to another apartment. The State did not introduce this oral version of the statement at trial.

29. At 9:00 a.m., Assistant State's Attorney William P. Farrell, Jr., in Detective Baldree's presence, took down Monica's statement, in summary form. (Trial Tr. R-4-13; Exhibit J). This was basically a reiteration of what Monica had first said at 3:00 a.m. It was the prosecutor's summary of Monica's statement that was introduced at trial. (Trial Tr. R-13 et seq.). According to the prosecutor's summary, Monica and Kevin (Kmuel) argued with Bobbie King. (Trial Tr. R-15). Monica dissociated herself from the argument, but Kevin and Bobbie King continued to argue. (Trial Tr. R-15-16). When Monica next saw Kevin, he "told her that everything would be all right because he just killed his mother." (Trial Tr. R-16). Kevin took Monica to the bathroom. Bobbie was lying in the doorway, bleeding from her head or face and not moving. (Trial Tr. R-16). Monica went to the kitchen and got a clear plastic bag and put it over Bobbie King's head. (Trial Tr. R-16). Kevin then tied a cord over the bag and around his mother's neck. (Trial Tr. R-16). The two put Bobbie King in the bathtub and covered her with laundry, so that no one could see her. (Trial Tr. R-17). The two left and took a nap. (Trial Tr. R-17). Then, Monica cut some fabric into strips, and the two tied Bobbie King and put her in a cart, which they took to another apartment. (Trial Tr. R-17-18).

<u>The Evidence at Trial</u>

30. The evidence at trial, as summarized by the Appellate Court on direct appeal (and as borne out by the transcript), was that Monica Cosby was residing with her paramour

8

Conviction Hearing Act, which expressly and unequivocally states, in the provision governing the contents of petitions, "Argument and citations and discussion of authorities shall be omitted from the petition." 725 ILCS 5/122-2. For each of the three grounds of ineffectiveness, the allegations, the merits of the issue raised, the post-conviction court's resolution, and the Appellate Court's resolution will be described.

33. Suppression of Monica Cosby's inculpatory statement was crucial because it was the State's principal piece of evidence against her. The totality of the State's case against Monica was that the decedent was alive when a plastic bag was placed over her head and that Monica had confessed to putting the bag over her head. (Trial Record R-32, 184 (State's arguments at trial)). If the statement had not been admitted, Monica would not have had to testify to rebut it, and could have relied for her defense on the State's inability to prove its case against her. With the evidence presented, the only sustainable conviction would have been for the lesser offense of concealment of a homicidal death. Thus, the two-pronged test for the ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668, 687-88 (1984), is met: (1) counsel's performance fell below an objective level of reasonableness, and (2) counsel's deficient performance prejudiced the defendant.

34. Trial counsel told attorney Mills that he had not sought to suppress the statement and felt that it would be helpful to the defense. (Exhibit B, Affidavit of Alan Mills, ¶ 28).

35. It would have been optimal for counsel to seek to exclude the statement before trial. Even failing that, he should at least have done so after the medical examiner testified and clarified that the decedent was alive when Monica put the plastic bag over her head.

10

**Trial Counsel's Failure to Move to Suppress the Statement Based on the Violation of Monica's Fifth Amendment Right to Counsel**

37. Monica Cosby's post-conviction petition alleges that her statement should have been suppressed because the police initiated questioning "after they knew that she was represented by counsel." (Exhibit B at ¶ 11). It was also alleged that trial counsel had "failed to cite a violation by the police of [Monica's] right to counsel as a ground for the motion." (Exhibit B at ¶ 44). This incorporates the standard set forth in the seminal case of Edwards v. Arizona, 451 U.S. 477 (1981), and is sufficient to allege that trial counsel was ineffective in failing to move to suppress the inculpatory statement on that ground.

38. Factually, the post-conviction petition alleges that after her arrest, at midnight on December 28, 1995, Monica conferred with attorney Alan Mills at Area 3 Police Headquarters. (Exhibit B at ¶ 9). A police officer interrupted Monica's consultation with Mills to ascertain that she was aware of her rights under Miranda v. Arizona, 384 U.S. 436 (1966). Mills advised the police that Monica was exercising her right be remain silent. (Exhibit B at ¶ 9). This allegation is supported by Mills's affidavit. (Affidavit of Alan Mills, ¶ 19, 20).

39. Trial counsel had in his possession before trial, as part of the police "street files" that had been tendered in discovery, a copy of Mills's attorney identification card. (Affidavit of Alan Mills, ¶ 27). The relevance of this would be to support an allegation that trial counsel was ineffective in failing to move to suppress Monica's statement on the basis of a violation of the fifth amendment right to counsel.

40. The post-conviction petition further alleges that at 3:00 a.m. on the morning following her arrest, the police confronted Monica with the statement of co-defendant Kmuel

12

under traditional standards. This is 'designed to prevent police from badgering a defendant into waiving his previously asserted <u>Miranda</u> rights.'" <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 177 (1991) (citation omitted).

44. For the police to confront Monica with co-defendant King's statement was interrogation, that is, "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 302 (1980). Confronting a suspect with the State's evidence and asking for a statement was interrogation, and as it was not initiated by Monica, this conduct violated <u>Edwards v. Arizona</u>.

45. The circuit court, in summarily dismissing the post-conviction petition as frivolous and patently without merit with no parties present in court, did not specifically address whether trial counsel was ineffective in failing to move to suppress the statement insofar as it was taken in violation of Monica's fifth amendment right to counsel and <u>Edwards v. Arizona</u>.

46. The circuit court dismissed the post-conviction petition, which alleged trial counsel's ineffectiveness in failing to move to suppress the statement, as frivolous and patently without merit (without input from either party). <u>See</u> 725 ILCS 5/122-2.1(a)(2). The court relied on Alan Mills's affidavit, according to which trial counsel stated that he did not seek to suppress the statement because he felt it would be helpful to Monica's defense, and thus was a matter of "professional judgment." (Exhibit C at 3).

47. The circuit court, in her second oral pronouncement, also noted that it was the 9:00 a.m. and not the 3:00 a.m. statement that was actually introduced and admitted into evidence. (Exhibit D, Transcript of March 26, 2001 at A-3-4). At trial, the court had

14

characterized the 9:00 a.m. statement as "separate" from the first (Trial Tr. R-29), a
characterization that is disputed here.

48. The fact that it was the 9:00 a.m. statement that was actually admitted does
not alter the analysis. It is consistent with the first substantively (except for an apparent
discrepancy in the timing of the placement of the plastic bag vis-a-vis the nap and the decedent's
placement in the tub). It is basically a reiteration or memorialization of the first, summarized by
the prosecutor who was called to take it down, and should not be construed as a second, separate
statement at all. Officer Baldree was present for both statements. (Trial Tr. R-5, 22-23).
Baldree told the prosecutor about the 3:00 a.m. statement and thought that the prosecutor had
reviewed the officers' notes. (Trial Tr. R-20-21). There was no showing at trial that Monica
initiated questioning. Once the earlier statement had been made, its repetition was a foregone
conclusion. And, if Monica had not repeated her earlier statement, the State, at trial, would have
simply introduced the oral version through the police officer. (Instead, Monica's attorney
brought it up in cross-examining Detective Baldree on several minor points, not related to the
elements of the offense, that were omitted from one version or the other. (Trial Tr. R-20-30).)

49. In any case, even if it is found that there were two statements, under Edwards
v. Arizona, both would have to be suppressed unless Monica initiated them, as there was no
break in custody and counsel was not called in. See People v. Howerton, 335 Ill. App. 3d 1023,
1027, 782 N.E.2d 942, 946 (3d Dist. 2003) (all statements made by a defendant after requesting
counsel pursuant to Miranda, even those made the next day when counsel was not expressly
requested, had to be suppressed under Edwards v. Arizona).

50. It was argued to the Appellate Court of Illinois that the summary dismissal of

15

the petition as frivolous and patently without merit at the initial stage of the post-conviction process was erroneous because Monica's allegation of ineffective assistance of counsel for failing to seek to suppress the statement based on a violation of the fifth and fourteenth amendment right to counsel, taken as true, states a claim of deprivation of a constitutional right. Thus, it was argued, the matter should be remanded for further proceedings under the Post-Conviction Hearing Act.

51. The Appellate Court first noted that, as the circuit court had recalled, the 3:00 a.m. statement that was first taken was not admitted; it was the statement that was memorialized when the prosecutor arrived at 9:00 a.m. that was admitted. (Exhibit E at 7). Yet, the Appellate Court did not seem to reject the Edwards v. Arizona argument on that basis. Rather, the Appellate Court "assum[ed] that the two statements were somehow connected," and nevertheless found that even "the 3:00 a.m. statement was not subject to suppression." (Exhibit E at 7).

52. The Appellate Court ultimately avoided the issue of trial counsel's ineffectiveness in failing to move to suppress the statement on this ground without addressing its merits, stating that it was not raised in the post-conviction petition itself, but if "raised at all, [was] mentioned only in regards to petitioner's claim that her trial attorney was ineffective in failing to move to suppress her statement." (Exhibit E at 9). The Appellate Court stated that the Edwards v. Arizona issue was now being advanced "independent[ly]" on appeal, presumably apart from the sixth amendment ineffective assistance of counsel claim, and was being raised for the first time on appeal. (Exhibit E at 9).

53. The Appellate Court claimed that the "substantive claim[] that her statement was taken in violation of her fifth amendment right to counsel" was "nowhere contained in the

16

petition itself." (Exhibit E at 9). Immediately afterward, the Appellate Court stated, "[r]ather, th[is] alleged violation[], if raised at all, w[as] mentioned only in regards to petitioner's claim that her trial attorney was ineffective for failing to move to suppress her statement." Id. From this, it appears that the Appellate Court might have grasped the following: that the violation of the right to counsel was, indeed, raised by the vehicle of the ineffective assistance of trial counsel below, but on appeal, the fifth amendment issue was only raised independently of the ineffective assistance of counsel claim.

54. The Appellate Court was wrong. In the opening brief filed in that court, the Edwards v. Arizona/right to counsel issue was, indeed, raised through the vehicle of the sixth and fourteenth amendment right to the effective assistance of counsel. While the sixth amendment was not cited throughout the brief as laboriously as here, the following text unambiguously illustrates that that was what was intended: "Specifically, the petition sets forth facts sufficient to allege that trial counsel was ineffective in failing to move to suppress Monica's statement to authorities"; the allegations "demonstrate that counsel failed to provide Monica with effective assistance at trial"; "[c]ounsel's failure to pursue his motion to suppress Monica's statements was objectively unreasonable and denied her the effective assistance of counsel to which she is entitled under the sixth amendment" (citing the sixth and fourteenth amendments and Strickland v. Washington); "Monica's statement should have been suppressed under Edwards v. Arizona," and "[c]ounsel was ineffective for not moving to suppress it"; and "[t]he allegations in Monica's post-conviction petition are sufficient to show not only cognizable claims of deprivations of her constitutional rights, both by the unlawful conduct of the police and by counsel's failure to bring it to the trial court's attention by moving to suppress her incriminating statement." (Monica

17

Cosby's Opening Brief in Appellate Court No. 1-01-2083, passim).

55. It was (rather painstakingly) explained in the Petition for Rehearing, which the Appellate Court summarily denied, that the violation of the right to counsel was, in fact, raised on appeal through the vehicle of the denial of the right to the effective assistance of counsel. A copy of the Petition for Rehearing is attached hereto as Exhibit H. See Exhibit H, pages 1-5.

Trial Counsel's Failure to Move to Suppress the Statement on the Ground that It was Involuntary

56. Monica Cosby alleged in her post-conviction petition (which incorporates her supporting affidavit) that at the time she made her statement, she was sleep-deprived (not having slept in several days), had not eaten for several days, and was under the continuing effects of marijuana and alcohol consumed over the preceding days; she smoked a half a blunt (a marijuana-filled cigar) within several hours before her arrest on the evening of December 27, 1995. (Affidavit of Monica Cosby, ¶ 8, 16-19). Monica also alleges severe depression and states that while awaiting trial at Cook County Jail, she was diagnosed with depression, for which she was prescribed a series of psychotropic medications. (Affidavit of Monica Cosby, ¶ 23, 28; Exhibit B, ¶ 32).

57. Monica's allegations, which should have been taken as true at the first stage of the post-conviction process, People v. Truly, 318 Ill. App. 3d 217, 222, 741 N.E.2d 1115, 1120 (1st Dist. 2000), were sufficient to allege a deprivation of a constitutional right. The due process clause of the fourteenth amendment is violated if the State, in making its case, employs an involuntary confession. Reck v. Pate, 367 U.S. 433, 435 (1961). In determining whether a confession is involuntary, the "question in each case is whether a defendant's will was overborne

18

at the time he confessed," for "[i]f so, the confession cannot be deemed the product of a rational intellect and a free will." Id. at 440 (citations omitted). Whether a confession is voluntary is determined by considering the totality of the circumstances. Withrow v. Williams, 507 U.S. 680, 693 (1993). Relevant factors include the defendant's physical condition and mental health. Id. Inadequate food and sleep are factors affecting voluntariness. Greenwald v. Wisconsin, 390 U.S. 519, 521 (1968) (per curiam).

58. If the failure of the police to advise the defendant of the rights to remain silent and to have counsel present during interrogation weigh in favor of involuntariness, then so too should the refusal of the police to honor those rights once invoked, as alleged here and as is described infra. See id. at 693-94, citing Haynes v. Washington, 373 U.S. 503 (1963).

59. Another factor bearing on voluntariness is whether the police used deception or false promises of leniency. Monica alleged that the police, in urging her to disregard her attorney's advice and talk, suggested to her that she should not be blamed for what her co-defendant had done. (Affidavit of Monica Cosby, ¶ 18). A "confession induced by a false promise of leniency . . . may be deemed coerced and therefore inadmissible in a criminal prosecution." Alexander v. DeAngelo, 329 F.3d 912, 918 (7th Cir. 2003). And, if the police misrepresented Kmuel King's statement to Monica, see note 3 supra, that too would be "relevant" as a factor bearing on voluntariness, even if it does not render the confession involuntary per se. See Frazier v. Cupp, 394 U.S. 731, 739 (1969).

60. The circuit court dismissed the post-conviction petition, which alleged trial counsel's ineffectiveness in failing to move to suppress the statement, as frivolous and patently without merit (without input from either party). The court relied on the Mills affidavit, according

19

to which trial counsel stated that he did not seek to suppress the statement because he felt it would be helpful to Monica's defense, and thus was a matter of "professional judgment." (Exhibit C at 3). The court also seems to have been of the (misguided) belief that counsel's failure to move to suppress a statement as involuntary may only be challenged if the "defendant claims [it was] physically coerced or where there is independent evidence supporting such claim." (Exhibit C at 3, citing People v. Martin, 236 Ill. App. 3d 112, 122, 603 N.E.2d 603 (1st Dist. 1992). Certainly, the United States Supreme Court has held otherwise. Leyra v. Denno, 347 U.S. 556, 558 (1954) (mental as well as physical coercion may render a confession involuntary). Martin sets forth a general rule and does not hold that a failure to move to suppress a statement is never reviewable except in cases of physical coercion. Martin indicates that in the physical coercion situation, no deference at all would be given to counsel's omission, but does not hold that in other contexts, counsel's omission is entirely immune from review. In fact, the Court indicates that even without coercion, counsel's omission is reviewable when due to a misunderstanding of law. (The instant case presents counsel's apparent misunderstanding of fact.) Claims of ineffective assistance of counsel for failing to move to suppress statements were not rejected, although no coercion was found, in People v. Nunez, 325 Ill. App. 3d 35, 41-42, 756 N.E.2d 941, 946-47 (2d Dist. 2001) and People v. Fernandez, 162 Ill. App. 3d 981, 516 N.E.2d 366 (1st Dist. 1987). An exercise of "judgment," moreover, does not immunize a trial attorney's omission from review if, viewed in the context of the applicable law and facts, it was not a reasonable professional judgment. Wiggins v. Smith, 123 S.Ct. 2527, 2536 (2003).

61. It was argued to the Appellate Court of Illinois that the summary dismissal of the petition as frivolous and patently without merit at the initial stage of the post-conviction

process was erroneous because Monica's allegations of ineffective assistance of counsel for failing to move to suppress the statement as involuntary, taken as true, state a claim of deprivation of a constitutional right, and that the matter should be remanded for further proceedings under the Post-Conviction Hearing Act.

62. The Appellate Court first noted that the 3:00 a.m. statement that was first taken was not admitted; it was the statement that was memorialized when the prosecutor arrived at 9:00 a.m. that was admitted. (Exhibit E at 7). The Appellate Court "assum[ed] that the two statements were somehow connected," but found that even "the 3:00 a.m. statement was not subject to suppression." (Exhibit E at 7).

63. The Appellate Court ultimately rejected the issue of voluntariness without addressing its merits on the ground that it was not raised in the post-conviction petition itself, but if "raised at all, [was] mentioned only in regards to petitioner's claim that her trial attorney was ineffective in failing to move to suppress her statement." (Exhibit E at 9). Like the Edwards v. Arizona issue, the Appellate Court stated that the voluntariness issue was now being advanced "independent[ly]" on appeal, presumably apart from the sixth amendment ineffective assistance of counsel claim, and was being raised for the first time on appeal.

64. The opening brief filed on Monica's behalf in the Appellate Court did not raise this issue in a manner independent of the sixth amendment ineffectiveness claim and to the exclusion of it. See paragraph 54 supra. In addition, the following text appeared in the section regarding voluntariness: "It was important for counsel to seek to suppress the statement on this ground" and "[t]his allegation was included in the motion that trial counsel prepared, but did not pursue." (Opening brief in Appellate Court No. 1-01-2083, page 20).

21

65. The Appellate Court stated that the trial court did not address the claim of voluntariness at all. (Exhibit E at 9). In a sense, however, the circuit court did address the issue, albeit erroneously: the court stated that a determination whether counsel was ineffective in failing to seek to suppress a statement "[i]nvariably . . . involves the voluntariness of a confession," which the court believed was not met in this case because "[p]etitioner neither claims that she was physically coerced nor that there was any independent evidence supporting such claim." (Exhibit C at 3). This, rather than waiver, may explain the court's failure to affirmatively deal with the voluntariness issue, and the court might have resolved it had she considered it viable, as she should have.

### Trial Counsel's Failure to Move to Suppress the Statement Based on the Violation of Monica's Fifth Amendment Right to Remain Silent

66. The post-conviction petition alleges that at midnight following Monica's arrest, attorney Mills "specifically informed the detective that Ms. Cosby was exercising her right to remain silent." (Exhibit B at ¶ 9). It alleges that trial counsel was "aware that the police initiated questioning of Monica after she had exercised her Fifth Amendment right to remain silent," yet failed to moved to suppress her statement on that ground. (Exhibit B at ¶ 11).

67. If, during custodial interrogation, a suspect "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." Any statement "taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." Miranda v. Arizona, 384 U.S. 436, 473-74 (1966).

68. The circuit court found that Monica did exercise her right to remain silent. (Exhibit C at 4). The Appellate Court also so found. (Exhibit E at 8).

22

69. In rejecting Monica's claim, the circuit court relied on <u>Michigan v. Mosley</u>, 423 U.S. 96 (1975). (Exhibit C at 4).

70. <u>Mosley</u> addresses the resumption of questioning once a suspect, like Monica, has invoked her right to remain silent and the suspect's request has, at least for a time, been honored. The Court declined to hold that once a suspect has invoked her right to remain silent, she "can never again be subjected to custodial interrogation by any police officer at any time or place on any subject." 423 U.S. at 101-02. The Court held that once a suspect's right to cut off questioning has been "scrupulously honored," authorities may, in some cases, resume questioning, but "only after the passage of a significant period of time and the provision of a fresh set of warnings." 423 U.S. at 105-06.

71. The circuit court found that two hours and fifteen minutes had passed between 12:45 a.m., when Monica exercised her right to remain silent, and 3:00 a.m., when she was re-advised of her rights and confronted with her co-defendant's statement. (Exhibit C at 4). The court also wrote a notation to the effect that according to Monica's affidavit, "several hours passed" between the two events. <u>Id</u>. This, the circuit court found, showed that the police had "scrupulously honored" Monica's right to cut off questioning. <u>Id</u>.

72. The Appellate Court agreed that the police had "scrupulously honored" Monica's invocation of her right to remain silent, and affirmed. (Exhibit E at 8).

73. Although the <u>Mosley</u> Court declined to establish a <u>per se</u> rule prohibiting the resumption of questioning after a defendant's invocation of the right to remain silent, and the defendant in that case did not prevail, Monica's case is distinguishable and her statement would have been properly suppressed under the guidelines established in <u>Mosley</u>.

23

74. The Mosley Court was careful to distinguish the case before it from one in which the "police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation or by persisting in repeated efforts to wear down his resistance and make him change his mind." 423 U.S. at 105-06. After Monica invoked her right to remain silent, she was not moved to a holding cell. Rather, she was kept alone in the interrogation room, with nothing to eat or drink, and where the police could have ready access to her. (Exhibit B at ¶ 9, 10). No sooner had Kmuel King made a statement than that same officer coaxed a statement from her (pretending to try to help her and suggesting that she should not be blamed for what her co-defendant had done), perhaps by misrepresenting the extent to which Kmuel's statement implicated Monica. (Affidavit of Monica Cosby, ¶ 18; see note 3 supra). This conduct is sufficiently egregious for Monica to prevail even under Mosley.

75. An important factor in Mosley, moreover, presents another important distinction from this case: although the police Mirandized and interrogated Mosley only two hours after he had invoked his right to remain silent, new officers were involved and they "restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." 423 U.S. at 105-06. The Court stressed that when the questioning was about an unrelated case, the conduct of the police was "quite consistent with a reasonable interpretation" of the suspect's "earlier refusal to answer any questions" about the crime as to which he had been interrogated earlier. 423 U.S. at 105. Even if questioning about the same crime does not automatically mean that the right to remain silent has been violated, it remains an important factor in the equation.

24

The Circuit and Appellate Courts' Refusals to Adhere to the Post-Conviction Hearing Act
Denied Monica Cosby Her Right to Due Process of Law

76. A state court's refusal to follow state law is an arbitrary state action that is cognizable as a deprivation of a federal constitutional right. United States ex rel. Hoover v. Franzen, 669 F.2d 433 n.28 (7th Cir. 1982); United States ex rel. Burnett v. Illinois, 619 F.2d 668, 670 (7th Cir.), cert. denied, 449 U.S. 880 (1980). A state court determination may have "so little basis in law and fact as to constitute a denial of due process." Id. (citing cases); U.S. Const., amend. XIV. "[F]ederal habeas corpus can provide relief for errors in state collateral review when the process violates some separate constitutional right." Jackson v. Duckworth, 112 F.3d 878, 879 (7th Cir. 1997).

77. The circuit court failed to follow the following well-established principles of Illinois and federal law:

A. Post-conviction petitions must be liberally construed, People v. Wiley, 205 Ill. 2d 212, 220, 792 N.E.2d 1274, 1279 (2001); People v. Coleman, 183 Ill. 2d 366, 382, 701 N.E.2d 1063, 1072 (1998), and a petition cannot be dismissed as frivolous and patently without merit if it states the "gist" of a constitutional claim. People v. Boclair, 202 Ill. 2d 89, 99, 789 N.E.2d 734, 741 (2002). A post-conviction petition "need only contain a simple statement which presents the gist of a claim for relief which is meritorious when considered in view of the record." People v. Edwards, 197 Ill. 2d 239, 259, 757 N.E.2d 442, 453 (2001), quoting People v. Dredge, 148 Ill. App. 3d 911, 913, 500 N.E.2d 445 (4th Dist. 1986). The Post-Conviction Hearing Act sets forth a single set of pleading rules, and does not set forth different rules for counsel and pro se litigants. See generally 725 ILCS 5/122-1 et seq. The circuit court failed to

25

liberally construe Monica Cosby's post-conviction petition.

       B. The circuit court's misunderstanding of what is required to resolve the question of voluntariness of a confession is contrary to clearly established federal law. See 28 U.S.C. § 2254(d)(1).

       78. The Appellate Court failed to follow the following well-established principles of Illinois and federal law:

       A. The Appellate Court avoided resolving important constitutional issues based on an apparent misunderstanding, which it disregarded even after the misunderstanding was clearly spelled out in a petition for rehearing, the mechanism provided by state law for setting forth "points claimed to have been overlooked or misapprehended by the court." Illinois Supreme Court Rule 367(a). The Appellate Court's disregard of such clarification, and its continued avoidance of the issues presented, are due process violations. U.S. Const., amend. XIV. "[I]f a State has created appellate courts as an 'integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." Evitts v. Lucey, 469 U.S. 387, 393 (1985) (citation omitted).

       B. The right of access to the courts is "founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." Wolff v. McDonnell, 418 U.S. 539, 579 (1974). For the Appellate Court to refuse to address issues squarely presented to it is every bit as much a denial of access to the courts as is, for instance, a state court's refusal to waive filing fees for an indigent inmate. See Burns v. Ohio, 360 U.S. 252 (1959).

C.  Any finding of waiver cannot fairly be based on a failure, in the post-conviction petition, to give the issues raised legal labels.  The Illinois Post-Conviction Hearing Act expressly states, in the provision governing the contents of the petition, that "[a]rgument and citations and discussion of authorities shall be omitted from the petition."  725 ILCS 5/122-2.  The issues raised here must be deemed to have been raised in the post-conviction petition because they are fully factually described within the petition and its detailed attachments (which, together, are more than 50 pages long).

D.  The circuit court dismissed the post-conviction petition within 90 days of its being filed as "frivolous and patently without merit."  See 725 ILCS 5/122-2.1(a)(2).  That is the standard used at the initial stage of the post-conviction process.  The standard is used when the petition is filed by inmates pro se as well as when it is prepared by counsel.  See People v. Smith, 326 Ill. App. 3d 831, 761 N.E.2d 306 (1st Dist. 2001); People v. Paleologos, 280 Ill. Dec. 878, 803 N.E.2d 108 (1st Dist. 2003).  If the court finds the petition to be frivolous and patently without merit, a written order is entered, without input from either party.  In accordance with the practice at stage one, no one was present in court, either the State or Monica's counsel, when the petition was dismissed.  At stage one, "the circuit court considers the petition independently, without input from either side," and "[a]t this stage, a defendant need not make legal arguments or cite to legal authority."  In re Gaultney, 174 Ill. 2d 410, 418, 675 N.E.2d 102 (1996).  After entering her ruling, the court mailed counsel a copy, along with a form notice advising her of the right to appeal.  (Exhibit I).

The procedure used by the circuit court might have been appropriate had the petition not stated the gist of one or more constitutional issues.  But what the Appellate Court did

27

was untenable: it treated the procedure as though it had occurred at stage two (although the circuit court never did) and then faulted counsel for not following procedures only available at stage two. (The post-conviction process proceeds to stage two when the petition is not dismissed as frivolous but is, instead, docketed for further consideration. See 725 ILCS 5/122-2.1(b); In re Gaultney, 174 Ill. 2d 410, 418, 675 N.E.2d 102 (1996).) It is apparent that the Appellate Court used the stage two standard because it discussed the trial court's decision to dismiss without an evidentiary hearing, the standard for dismissal at the end of stage two. Id. Then, it criticized counsel for not "alert[ing] the trial court that these claims were not being recognized or considered," even though there is no indication that counsel would ever have had any opportunity to do so. At stage two, a ruling in counsel's absence, as occurred here, would deny the petitioner due process of law. Cf. People v. Smith, 312 Ill. App. 3d 219, 726 N.E.2d 776 (1st Dist. 2000). The Appellate Court's transformation of the case into a stage two proceeding when the circuit court did not is so fundamentally unfair as to violate Monica's right to due process of law. U.S. Const., amend. XIV.

  E. The Appellate Court's avoidance of fundamental constitutional issues by a rigid and stilted adherence to "waiver" is inconsistent with the Illinois Supreme Court's pronouncements in People v. Coleman, 183 Ill. 2d 366, 388, 701 N.E.2d 1063, 1075 (1998): allegations in post-conviction petitions are to be "liberally construed," and a plenary standard of review for dismissals of petitions is appropriate so that the reviewing court may "make its own independent assessment of the allegations" and "be free to substitute its own judgment for that of the circuit court in order to formulate the legally correct answer." Id. It follows that if the reviewing court observes a constitutional violation in the factual allegations, then whether such

28

allegations were specifically "raised" below or not, dismissal is inappropriate.

<u>Monica Cosby's Actual Innocence</u>

79. In considering Monica's claim that she believed that Bobbie King was no longer alive at the time the bag was placed over her head, the trial court found that the mistake-of-fact defense was available to Monica, but not to co-defendant Kmuel King (who had inflicted the blows). (Trial Tr. S-3). To be sure, the defense was available to Monica under state law: if a defendant mistakenly believes a person is already dead when he performs the acts that actually result in death, the mistake-of-fact defense is available when the mistake could negate the requisite mental state for murder. <u>People v. Crane</u>, 145 Ill. 2d 520, 585 N.E.2d 99 (1991), <u>cert. denied</u>, 504 U.S. 924 (1992). (Presumably, the court found that the defense was not available to Kmuel King because the court believed that the concealment efforts were preceded by his own attack, undertaken with the intent to murder. "While the mistake-of-fact defense applies to those who attempt to destroy or conceal a body believed dead as the result of someone else's criminal conduct, it cannot apply to those who attempt to destroy or conceal a body believed dead as the result of their own criminal conduct." <u>People v. Rollins</u>, 295 Ill. App. 3d 412, 418, 695 N.E.2d 61, 65 (5th Dist. 1998).)

80. Ultimately, however, the court rejected the mistake-of-fact defense, stating that Monica had placed the bag over the decedent's head for the purpose of completing the process of killing, and had participated in tying her up while she was still alive in order to prevent her escape. (Trial Tr. S-5-6).

81. The circuit court did consider, and ruled on, the mistake-of-fact question. Counsel, however, had not adequately presented the defense, presumably because he was not

prepared to confront the proposition that Bobbie King was not dead at the time of the acts mentioned in Monica's statement, because of his misunderstanding of the autopsy report. (In closing argument, counsel did state that Monica believed that Kmuel had already killed his mother. (Trial Tr. R-193, 194-95).) Had counsel, in advance of trial, correctly understood the pathological evidence, and the critical relevance of the cause of death and when it occurred in relation to the acts to which Monica admitted, he might have better developed the facts that would support a mistake-of-fact defense.

82. The mistake-of-fact issue should have been resolved in Monica's favor. Placing the bag over the head could have been an effort to contain the blood from a deceased person. The tying could have been for concealment and ease of transport. Those would be more likely explanations for the acts than to effect Bobbie King's death. If Kmuel King had inflicted enough trauma to kill his mother, it is unexplained why, rather than simply inflicting additional trauma to complete the homicide, he would have Monica, for that purpose, engage in elaborate acts involving the plastic bag and the cutting of cloth into strips for tying.

83. Monica's testimony that Kmuel King announced to her that he had killed his mother, before she ever saw Bobbie King on the bathroom floor, was uncontradicted by any evidence presented at her trial. And, the question whether Monica believed Bobbie King to be dead, as she had been told, should be considered in the context of her recent marijuana and alcohol use.

84. Actual innocence is a "gateway" to any procedurally defaulted claims when necessary to prevent a "fundamental miscarriage of justice." Herrera v. Collins, 506 U.S. 390, 404 (1993).

30

85. Petitioner Monica Cosby respectfully requests that this Court issue a writ of habeas corpus, granting her the relief to which she may be entitled, including her release from custody, or the suppression of her inculpatory statement and a new trial. To the extent the factual bases of the ineffective assistance of trial counsel claims are deemed not to have been developed in the Illinois courts, this is not chargeable to Monica under 28 U.S.C. § 2254(e)(2), because she diligently sought to present her claims by seeking an evidentiary hearing in the Circuit Court of Cook County in the manner prescribed by Illinois law, but the state courts prevented her from doing so. Accordingly, she is, at a minimum, entitled to an evidentiary hearing in the federal district court. Williams v. Taylor, 529 U.S. 420, 429-37 (2000); Drake v. Portuondo, 321 F.3d 338, 346 (2d Cir. 2003).

                                        Monica Cosby, Petitioner

                                    By: _Suzanne A Isaacson_
                                        Suzanne A. Isaacson
                                        Assistant Public Defender
                                        Cook County, Illinois

Suzanne A. Isaacson
Identification No. 6204339
Assistant Cook County Public Defender
Officer of the Cook County Public Defender
(Edwin A. Burnette, Public Defender)
180 North LaSalle Street
Ninth Floor
Chicago, Illinois 60601
(312) 603-0600

31

VERIFICATION

Monica Cosby, under penalty of perjury, states that she is the petitioner applying for this writ of habeas corpus; that she has read the above and foregoing Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254; that she has knowledge of the facts therein, and that the same are true and correct.

Monica Cosby

32

# VOLUMINOUS RECORD

# PLEASE SEE CASE FILE

# FOR

# FURTHER INFORMATION



DOCKETED
MAR 2 3 2004

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

PriSONER CASE

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois. DOCKETED

MAR 2 3 2004

| | |
|---|---|
| **Plaintiff(s): Monica Cosby** | **Defendant(s):Alyssa B. Williams, Warden, Dwight Correctional Center** |
| County of Residence: Livingston     17105 | County of Residence: Livingston |
| Plaintiff's Atty:   Suzanne A. Isaacson | Defendant's Atty:   ATTORNEY GENERAL |
| Cook County Public Defender | Criminal Appeals Div. |
| 180 North LaSalle Street, 9th | 100 W. Randolph St. |
| Floor, Chicago IL 60601 | Chicago, IL 60601 |
| (312) 603-0600 | |

04C 2077

II. Basis of Jurisdiction:          3. Federal Question (U.S. not a party)

III. Citizenship of Principal
Parties (Diversity Cases Only)
                    Plaintiff:-N/A
                    Defendant:-N/A

JUDGE MANNING

MAGISTRATE JUDGE MASON

IV. Origin :                 1. Original Proceeding

V. Nature of Suit:           530 Habeas Corpus General

VI.Cause of Action:          28 U.S.C. sec. 2254. Petition for a writ of habeas corpus based on
                             violations of federal constitutional rights.

VII. Requested in Complaint
        Class Action:
        Dollar Demand:
        Jury Demand: No

VIII. This case IS NOT a refiling of a previously dismissed case.

FILED FOR DOCKETING
ED-7
04 MAR 19 PM 2:37
CLERK
U.S. DISTRICT COURT

Signature: _Suzanne A Isaacson_
                    19
Date: March 20, 2004

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it.
Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of

EASTERN DIVISION

People of the State of Illinois ex rel. Monica Cosby v.
Alyssa B. Williams, Warden, Dwight Correctional Center



DOCKETED
04C MAR 2077
Case Number:

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

JUDGE MANNING

MAGISTRATE JUDGE MASON

| (A) | (B) |
|---|---|
| SIGNATURE *Suzanne Isaacson* | SIGNATURE |
| NAME Suzanne A. Isaacson | NAME |
| FIRM Cook County Public Defender | FIRM |
| STREET ADDRESS 180 North LaSalle Street, 9th Floor | STREET ADDRESS |
| CITY/STATE/ZIP Chicago IL 60601 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (312) 603-0600 / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6204339 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☑ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☑ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

U.S. DISTRICT COURT
CLERK
04 MAR 19 PM 2:3
FILED FOR DOCKETING
ED-7