# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 2077 | **DATE** | July 23, 2004 |
| **CASE TITLE** | *U.S. ex rel. Cosby v. Williams* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] After careful consideration of the entire record, petitioner Monica Cosby's § 2254 petition [1-1] is denied in its entirety. The clerk is directed to enter a Rule 58 judgment and to terminate this case. The court appreciates the efforts of counsel for both sides and thanks Suzanne Isaacson, Assistant Cook County Public Defender, for her excellent work in representing the petitioner. Enter Memorandum and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | |
| | No notices required. | | | | | |
| ✓ | Notices mailed by judge's staff. | | | JUL 29 2004 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | |
| RTS/c | courtroom deputy's initials | | | date mailed notice | | |
| | | | | mailing deputy initials | | |

Date/time received in central Clerk's Office

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA    )
ex rel. MONICA COSBY,         )
      Petitioner,            )
                          )
         v.                )      04 C 2077
                          )
ALYSSA B. WILLIAMS,      )
      Respondent.         )

DOCKETED

JUL 2 9 2004

## MEMORANDUM AND ORDER

Petitioner Monica Cosby's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the court. For the following reasons, Cosby's petition is denied.

### I.    Background

The court will presume that the state court's factual determinations are correct for the purposes of habeas review as Cosby does not challenge them and has not provided clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir.2002). The court thus adopts the state court's recitation of the facts, and will briefly summarize the key facts which are relevant to Cosby's § 2254 petition. *See People v. Cosby*, No. 1-98-3770 (1st Dist. Jun. 6, 2000) (direct appeal) (unpublished order); *People v. Cosby*, No. 96 CR 1896 (Cir. Ct. Apr. 8, 2001) (trial court's disposition of collateral attack) (unpublished order); *People v. Cosby*, No. 1-01-2083 (1st Dist. May 27, 2003) (collateral appeal) (unpublished order).

### A.    Bobbie King's Death

The victim, Bobbie King, lived in a one-bedroom apartment in Rodgers Park with her young son. In late 1995, Kevin King (Bobbie's adult son), Cosby (Kevin's girlfriend), and

Cosby's three children moved into Bobbie's apartment. The new arrivals caused Bobbie to give up her bedroom and sleep on the floor by her son's crib. Bobbie must not have liked the new living arrangement as she told her daughter that she wanted Kevin, Cosby, and Cosby's children to move out.

Shortly thereafter, on December 26, 1995, Cosby and Kevin went over to a friend's apartment and Cosby consumed beer, rum, and marijuana. Later that evening after Kevin and Cosby returned to Bobbie's apartment, Bobbie told them that they would have to move out in a few days. Bobbie, Kevin, and Cosby argued. Cosby took her children into the kitchen while Kevin and his mother continued to argue. Kevin then entered the kitchen, told Cosby that everything would be all right because he had killed his mother, and led Cosby to the bathroom where she saw Bobbie's body, with a bloodied face and head, lying motionless in the doorway.

Cosby obtained a plastic bag and placed it over Bobbie's head. Kevin secured the bag by tying an electrical cord around Bobbie's neck. Cosby and Kevin then moved the body into the bathtub, covered it with clothing, and retired to the living room to engage in sexual relations and take a nap. Several hours later, they tied Bobbie's hands and feet together, wrapped her body in a shower curtain, placed her upside-down in a shopping cart, and hid the cart in a neighbor's closet.

Bobbie's daughter called the police when her mother was missing. The police thus visited Bobbie's apartment twice during the afternoon of December 27th. The first time, Cosby denied that she knew Bobbie. The second time, she told them that she had last seen Bobbie at approximately 5:00 a.m., just before she and Kevin had gone into the bedroom to engage in sexual relations. According to Cosby, when they emerged, Bobbie was gone. Police arrived for

- 2 -

a third time later that day pursuant to a call from one of Cosby's friends who told the police that Cosby had shown her the body. Cosby and Kevin were subsequently arrested and charged with murder and concealment of a homicidal death.

### B. Questioning by Police

Shortly after midnight on December 28th, while in police custody, Cosby invoked her right to remain silent. Around that time, she met with Alan Mills, a family friend and attorney. Mills also reiterated that Cosby wished to remain silent. At approximately 3:00 a.m., the police again informed Cosby of her rights under *Miranda v. Arizona*, 385 U.S. 436 (1966), and confronted her with a statement made by Kevin, her co-defendant. In response, Cosby stated, among other things, that "[s]he brought a plastic bag to the bathroom and put the plastic bag over Bobbie King's head."

Later, at approximately 9:00 a.m., the police once again informed Cosby of her *Miranda* rights and she agreed to give a memorialized statement to an Assistant State's Attorney. In this statement, which was later introduced at trial, Cosby acknowledged that she understood her rights under *Miranda,* had been given water, had refused any other food or drink, and had been treated well by the police and the Assistant State's Attorney. She then stated, among other things, that after Kevin showed her Bobbie's body, she went to the kitchen to get a clear plastic bag to put over Bobbie's head and then placed the bag over Bobbie's head.

She also told the Assistant State's Attorney that she helped Kevin move Bobbie into the bathtub and cover the body with clothing, subsequently removed Bobbie from the bathtub, cut strips off a blanket to tie her up, helped Kevin tie her hands and feet together, and placed her upside-down in a cart to "get rid of the body." She concluded by stating that she and Kevin took

the cart to another apartment to hide it until they could take it out of the building safely without getting caught by the police.

### C.    Direct Proceedings

At Cosby's trial before Judge Bertina Lampkin, medical testimony indicated that Bobbie had died as a result of strangulation and that blunt force trauma to the head was a major contributing factor. It also indicated that Bobbie had suffered three separate blows to the head and that she was alive when the bag was placed over her head and when her hands and feet were tied together. Cosby's 9:00 a.m. statement was also admitted against her.

Cosby testified and attempted to put a positive slant on her relationship with Bobbie. She also stated that she was afraid of Kevin and that she thought Bobbie was dead when she helped move her body into the bathtub. In addition, she testified that Kevin placed the bag over Bobbie's head and that she had previously told the police that she did put the bag onto Bobbie because she feared Kevin.

Cosby was found guilty of first degree murder and concealment of a homicidal death. During the sentencing hearing, the State emphasized the brutality of the crime and Cosby's callous behavior. Cosby expressed remorse and the defense presented evidence showing that Cosby was involved with several community groups and had a history of abusive relationships with men, a difficult upbringing, and no prior criminal record. Judge Lampkin found that Cosby had helped Kevin brutally murder Bobbie and knew that Bobbie was alive when the bag was placed over her head. She also stated that she believed that Cosby's trial testimony was untruthful and that her statement during the sentencing hearing was insincere. Finally, she discounted the positive statements in the letters Cosby presented and found that Kevin did not

- 4 -

force her to act as she did. She thus sentenced Cosby to forty years for murder plus three years for concealment, to be served consecutively.

On direct appeal, Cosby presented a battered women's defense and contended that the sentencing judge had abused her discretion by imposing an excessive sentence. The appellate court rejected this argument but found that the trial court had erred by imposing a consecutive rather than a concurrent sentence. Upon remand, Cosby was resentenced accordingly.

### D.    Collateral Proceedings

Cosby then filed a state post-conviction petition contending that: (1) the police violated her constitutional rights when they took her statement at 3:00 a.m.; (2) trial counsel was ineffective for failing to move to suppress the 3:00 a.m. statement, failing to interview the medical examiner, failing to develop a defense based on battered women's syndrome, and failing to request a competency hearing prior to trial; and (3) appellate counsel was ineffective for failing to raise trial counsel's deficiencies on appeal.

With respect to the 3:00 a.m. statement, the trial court noted that trial counsel had considered filing a motion to suppress because a motion had been prepared by counsel. Counsel told another lawyer as well as Cosby, however, that he had decided not to try to suppress the statement because he thought it would be helpful to the defense. The trial court also found that there was no reasonable probability that the result of the proceedings would have been different if counsel had tried to suppress the statement because the police had acted properly and Cosby had decided to make a statement. It thus dismissed the petition as frivolous and patently without merit.

On appeal, Cosby raised the suppression issue and contended that the police conduct underlying her statement constituted independent grounds for relief. The appellate court began by stressing that the 3:00 a.m. statement had not been admitted at trial. It then held that even if the 3:00 a.m. and the 9:00 a.m. statements were somehow connected, the 3:00 a.m. statement was not subject to suppression under *Miranda*. It thus concluded that under *Strickland v. Washington*, 466 U.S. 668 (1984), trial counsel was not ineffective for failing to raise a losing argument and that appellate counsel was not ineffective for failing to challenge trial counsel's decision regarding the motion to suppress. It also found that Cosby's remaining argument was procedurally defaulted. Cosby filed an unsuccessful petition for leave to appeal ("PLA") with the Illinois Supreme Court.

## II. Discussion

In Cosby's federal habeas petition, she contends that: (1) trial counsel was ineffective because he failed to try to suppress her statement and appellate counsel was ineffective for failing to raise this issue; (2) the appellate court incorrectly found that she had waived her argument that her statement was involuntary and had been taken in violation of her Fifth Amendment right to counsel; (3) the trial and appellate courts' refusal to follow the dictates of the Illinois Post-Conviction Hearing Act violated Cosby's due process rights; (4) she is entitled to relief because she is actually innocent; and (5) she is entitled to an evidentiary hearing on her claims.

### A. Exhaustion and Procedural Default

Before this court may reach the merits of Cosby's federal habeas claims, it must consider whether she has exhausted her state remedies and avoided procedural default under Illinois law.

*See Mahaffey v. Schomig*, 294 F.3d 907, 914-15 (7th Cir.2002). To exhaust state court remedies, a petitioner must give the state courts an opportunity to act on each of her claims before she presents them to a federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). State remedies are exhausted when they are presented to the state's highest court for a ruling on the merits or when no means of pursuing review remain available. *Boerckel*, 526 U.S. at 844-45, 847; 28 U.S.C. § 2254(c). Here, Cosby has exhausted her state court remedies because no state court relief is available to her at this stage in the proceedings.

Procedural default occurs when a petitioner fails to comply with state procedural rules. *Mahaffey*, 294 F.3d at 915. This occurs when the petitioner fails to pursue all appeals required by state law, *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), or fails to fully and fairly present his federal claims to the state court, *Boerckel*, 526 U.S. at 844. It also occurs when the state court did not address a federal claim because the petitioner failed to satisfy an independent and adequate state procedural requirement, *Stewart v. Smith*, 536 U.S. 856 (2002). If an Illinois appellate court finds that a claim is waived, that holding constitutes an independent and adequate state ground. *Rodriquez v. McAdory*, 318 F.3d 733, 735 (7th Cir.2003).

Nevertheless, this court may still reach the merits of a procedurally defaulted claim if the petitioner establishes either cause for his failure to follow a rule of state procedure and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). To establish a fundamental miscarriage of justice, the petitioner must present new and convincing evidence of his innocence by showing that it is more likely than not that no reasonable juror would convict him in light of the new evidence. *Schlup v.*

*Delo*, 513 U.S. 298, 324 (1995). The court will discuss procedural default when it addresses the merits.

## B.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In *Williams,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *See Lockyer v. Andrade,* 123 S.Ct. 1166, 1174 (2003) (unreasonable application more than incorrect or erroneous). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Searcy v. Jaimet,* 332 F.3d 1081, 1089 (7th Cir. 2003) (decision need not be well reasoned or fully reasoned and is reasonable if one of several equally plausible outcomes); *Schultz v. Page,* 313 F.3d 1010, 1015

(7th Cir. 2002) (reasonable state court decision must be minimally consistent with facts and circumstances of the case).

### C.    Cosby's Claims

#### 1.    Motion to Suppress

Cosby's main argument centers around trial counsel's decision not to try to suppress her statement. According to Cosby, the state's theory was that Bobbie died of strangulation and Cosby was responsible because she confessed to placing a plastic bag over Bobbie's head. Cosby contends that without her confession regarding the plastic bag, the state's case against her would have been weak and she would not have had to take the stand to attempt to rebut her confession. Cosby appears to be focusing on her 3 a.m. statement (which was not admitted at trial), as opposed to her 9 a.m. statement. For the purposes of her habeas petition, the court will assume that if the 3 a.m. statement was improper, the 9 a.m. statement was as well.

To render effective assistance of counsel under the Sixth Amendment to the United States Constitution, counsel's performance must satisfy the well-known *Strickland* standard. *See Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Under the first prong of the *Strickland* standard, Cosby must show that her counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. The second *Strickland* prong requires Cosby to establish that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. If a defendant fails to satisfy one of the *Strickland* prongs, the court's inquiry under *Strickland* ends. *See id.* at 697; *see also Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir.2002). Here, regardless of how Cosby frames her ineffective assistance claims vis-a-vis suppression of her statement, she is not entitled to habeas relief.

### a.    Ineffective Assistance – Right to Counsel

Cosby argues that counsel was ineffective for failing to move to suppress her statement because the police questioned her knowing that she was represented by counsel and had asked for her lawyer. The Illinois Appellate Court found that Cosby had exercised her right to remain silent at some point before 12:45 a.m. on December 28, 1995, and that the police advised her of her rights again at 3:00 a.m. when they confronted her with Kevin's statement. Relying on *Strickland* and *Michigan v. Mosely*, 423 U.S. 96 (1975), the appellate court found that the police had scrupulously honored Cosby's right to cut off questioning because she had been given fresh *Miranda* warnings and a significant amount of time had elapsed between interrogations.

In *Michigan v. Mosely*, the Supreme Court held that statements made by a defendant who had earlier invoked her right to remain silent are admissible if police scrupulously honor her right to cut off questioning. 423 U.S. at 104. In deciding whether police scrupulously honored a defendant's rights, courts should consider whether: (1) the police immediately halted the initial interrogation after the defendant invoked her right to remain silent; (2) a significant amount of time elapsed between the interrogations; (3) a fresh set of Miranda warnings were given prior to the second interrogation; and (4) the second interrogation addressed a crime that was not the subject of the first interrogation. *Id.* at 104-05. Consistent with *Mosley*, however, police may renew questioning on a subject even if a defendant previously cut off questions on that topic. *See United States v. Schwensow*, 151 F.3d 650 (7th Cir. 1998).

Here, the Illinois Appellate Court identified the correct controlling Supreme Court precedent. Applying that precedent, it found that the evidence showed that Cosby was aware of and understood her rights under *Miranda* during both interviews and nevertheless chose to make

a statement when she realized that Kevin was speaking with the police. With the wisdom of 20/20 hindsight she may wish that she had declined to speak with the police. This does not change the fact that the appellate court's finding that her statement was voluntary is not an unreasonable application of clearly established federal law as determined by the Supreme Court or an unreasonable determination of the facts in light of the evidence.

### b. Ineffective Assistance – Voluntariness & Right to Silence

Cosby next takes issue with the appellate court's finding that she waived the arguments that: (1) her statement was involuntary because she was sleep and food deprived, under the influence of drugs and alcohol, and suffering from depression; and (2) her statement had been taken in violation of her Fifth Amendment right to counsel. The Illinois Appellate Court found that these claims were waived because they were not sufficiently raised in the petition, which was prepared by counsel.

As noted above, a defendant must properly present his constitutional claims to the state courts to avoid procedural default. *See generally O'Sullivan v. Boerckel*, 526 U.S. at 845. The failure to properly present a claim to the state courts is an independent and adequate state procedural ground which precludes habeas review if the state court found that the procedural defect barred it from resolving the defendant's claims on the merits. *See Dressler v. McCaughtry*, 238 F.3d 908, 912-13 (7th Cir. 2001). This is exactly what happened here: Cosby failed to properly present her voluntariness and right to silence arguments in the manner required by state law and the state court found that this delict prevented it from reaching the merits of that claim. Accordingly, these claims are procedurally defaulted based on an independent and adequate state ground.

The court acknowledges that Cosby believes that she adequately presented her claims to the state courts and that those courts erroneously found that she failed to do so. The record does not support this argument. It is well-established that a habeas petitioner must present specific federal constitutional claims to the state court before she can raise those specific federal constitutional claims in a federal habeas proceeding. *Verdin v. O'Leary*, 972 F.2d 1467, 1474-75 (7th Cir.1992) (a petitioner need not cite "book and verse of the federal constitution" to present a constitutional claim but must "raise the red flag of constitutional breach" in state court or her claims will be barred in federal court).

Here, Cosby's state court post-conviction petition referred only generally to counsel's failure to suppress her statement. *See* Petition at ¶ 54. It also noted, in the context of another argument, that she was questioned "after [police] knew she was represented by counsel." This is not enough to "raise the red flag of constitutional breach." Similarly, raising a voluntariness argument for the first time on appeal is not enough to preserve that claim. *See Castille v. Peoples*, 489 U.S. 346, 349 (1989) (to avoid procedural default, claims must appear in a petitioner's filings with the state trial court and intermediate appellate court as well as in her PLA). Thus, Cosby's voluntariness and right to silence claims are procedurally defaulted.

A federal court may not grant relief on a procedurally defaulted claim unless the petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. at 750. Cosby raises actual innocence as a separate argument and for the reasons discussed below, the fundamental miscarriage of justice exception based on actual innocence is inapplicable.

- 12 -

Although Cosby does not contend that cause and prejudice excuse her default, the court will nevertheless consider whether these exceptions can help her. Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Here, Cosby failed to properly follow state procedural rules.. Nothing in the record before the court indicates that an objective factor prevented her from doing so. Thus, cause does not excuse her default. Moreover, an allegation of ineffective assistance of counsel is not, by itself, enough to establish prejudice. *See Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998). Thus, neither cause nor prejudice exists.

### c.    Ineffective Assistance – Trial Strategy

For the reasons discussed above, there are no grounds to seek suppression of Cosby's statement. The failure to raise a losing argument, whether at trial or on appeal, is reasonable and thus does not constitute ineffective assistance of counsel. *Rodriguez v. United States*, 286 F.3d 972, 985 (7th Cir.2002); *Stone v. Farley*, 86 F.3d 712, 718 (7th Cir. 1996). Consequently, the performance of Cosby's counsel in not seeking to suppress her statement meets the objective standard of reasonableness required by *Strickland*.

In the interests of completeness, the court will nevertheless briefly address Cosby's claims that: (1) trial counsel's failure to try to suppress her statement constitutes ineffective assistance because competent counsel would have sought to suppress the statement before trial; and (2) trial counsel should have reassessed his strategy after the medical examiner testified that Bobbie was alive when Cosby put the plastic bag over Bobbie's head. According to Cosby, counsel was unprepared and formulated a faulty strategy because he failed to interview the

medical examiner and thus did not know that Bobbie was still alive when the bag was placed over her head and subsequently when her wrists and ankles were tied. Cosby contends that this delict made his trial strategy – that Cosby performed acts after Bobbie had already died – a guaranteed loser.

First and foremost, the fact that a statement can be used against a defendant does not require its suppression. Given that the court has rejected Cosby's arguments about the propriety of her statement, all counsel could do was try to make the best of the situation. He definitely did this by arguing that a mistake of fact occurred (*e.g.*, that Cosby thought Bobbie was already dead at the time she placed the bag over Bobbie's head, bound her body, and placed her upside-down in the cart and thus could not have intended to murder her).

In any event, attorneys have "wide latitude . . . in making tactical decisions" so to obtain habeas relief, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. at 689. Here, with respect to the pretrial decision not to file a motion to suppress, the record shows that counsel believed that Cosby's best chance was to argue mistake of fact. This strategy provided a viable defense to the homicide charge because Cosby's statement that Kevin told her he had killed his mother and that she viewed Bobbie's motionless and bloody body on the floor supports a mistake-of-fact defense. *See People v. Crane*, 145 Ill.2d 520, 526-28 (1991) (mistake of fact defense available to defendant who believed the victim was already dead at the time he burned the victim's body).

This strategy also provides a reason (albeit one that the trier of fact did not ultimately accept) as to why Cosby might not be responsible for Bobbie's death despite the fact that ample

evidence placed her at the scene of the crime and showed that she concealed a homicide. The respondent also correctly notes that the decision not to seek to suppress the statement benefitted Cosby because it meant that she was not required to testify at a pretrial hearing. This gave her the flexibility to decide whether to testify at the time of trial and did not allow the state to develop impeachment material ahead of time.

Accordingly, to the extent that Cosby believes that her attorney was ineffective for failing to move to suppress her statement before trial, the court finds that the state court's holding that counsel's tactical decision not to try to suppress the statement before trial was a matter of professional judgment and thus immune to attack under *Strickland* was neither an unreasonable application of *Strickland* nor an unreasonable interpretation of the facts.

Cosby also contends that counsel rendered ineffective assistance because he failed to interview the medical examiner before trial and thus did not know that Bobbie was still alive when the bag was placed over her head. The Illinois Appellate Court rejected this argument, stating that Cosby had failed to identify a specific witness that would have provided specific testimony that counsel should have elicited or show that counsel's actions probably affected the outcome of the trial.

"[S]trategic choices based on something less than a complete investigation are reasonable to the extent that reasonable professional judgment would support limits on that investigation." *U.S. ex rel. Hampton v. Leibach*, 347 F.3d 219, 236 (7th Cir. 2003). Here, the court agrees with the Illinois Appellate Court that counsel's investigation does not rise to the level of ineffective assistance because Cosby has failed to show that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

- 15 -

In state court, Cosby contended that counsel should have cross-examined the medical examiner regarding her conclusion that plastic was pressed against Bobbie's face. Petition for Post-Conviction Relief at 5. According to Cosby, he should have asked if her opinion would be affected by the fact that the body had been stored in an inverted position with the fact pressed against a soft surface because this question was asked in Kevin's trial and the examiner said that this fact would affect her opinion. *Id.*

This court finds that even if counsel had asked this question, the result would have been the same. The trial judge specifically found that Cosby helped Kevin murder Bobbie and knew that Bobbie was alive when the bag was placed over her head. The trial judge also specifically found that Cosby's testimony was not credible. These factual findings are entitled to a presumption of correctness so the court cannot pick and choose among the evidence and select only the evidence that is favorable to Cosby. *See* 28 U.S.C. § 2254(e)(1). This means that the court must accept that Bobbie had ordered Cosby and her children to leave the apartment, thus providing Cosby with a motive to assist in Bobbie's murder, and that Cosby obtained a plastic bag and put it over Bobbie's head and later tied up her body knowing she was alive.

In sum, it is not enough to merely set forth a supposition that further investigation would have uncovered evidence that would have exonerated Cosby. Instead, Cosby must point to specific evidence that counsel should have uncovered and present that specific evidence to the state courts before raising it in a federal habeas corpus petition. Because she failed to do so, her failure to investigate argument fails. And because all of her ineffective assistance of trial counsel arguments are unavailing, appellate counsel cannot have rendered ineffective assistance by failing to contend that trial counsel was ineffective.

### 2. Due Process

Cosby also contends that the trial and appellate courts' refusal to follow the dictates of the Illinois Post-Conviction Hearing Act violated her due process rights. A petitioner cannot obtain relief under § 2254 to redress alleged violations of state law. Moreover, Cosby does not contend that the state court's interpretation of Illinois Post-Conviction Hearing Act is at odds with any United States Supreme Court authority. Her request for federal habeas relief based on the alleged failure to comply with the Illinois Post-Conviction Hearing Act is, therefore, doomed as this court may only address the merits of claims based on "alleged violations of the federal constitution, laws and treaties." *Biskup v. McCaughtry*, 20 F.3d 245, 247 (7th Cir. 1994) ("§ 2254 cannot be invoked simply . . . to review alleged violations of state law").

### 3. Actual Innocence

Finally, Cosby asserts that she is entitled to relief because she is actually innocent. Her position appears to be that she in fact believed that Bobbie was dead when she placed the bag over her head and thus was entitled to receive the benefit of a mistake of fact defense. As Cosby acknowledges, the trial court found that Cosby placed the bag over Bobbie's head to complete the process of murdering her and tied her up before placing her in the cart to prevent her from escaping. She contends, however, that she could have just as easily placed the bag over Bobbie's head to contain the blood and tied up the body for easy of transport.

This argument appears to actually be a sufficiency of the evidence argument. As such, it must fail. According to the Supreme Court, a conviction must stand if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S.

307, 319 (1979). When the evidence is viewed in the light most favorable to the government, it

easily supports the rejection of Cosby's mistake-of-fact defense as it is just as reasonable, if not

more so, for Cosby to have placed a bag over Bobbie's head to suffocate her and for her to have

bound her up to restrain her. Cosby has thus failed to show that the state court's decision was

"contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States" or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State Court proceeding." 28

U.S.C. § 2254(d).

To the extent that Cosby is attempting to excuse her procedural default with respect to her

voluntariness and right to silence arguments, her claim of actual innocence is similarly

unavailing. As noted above, the fundamental miscarriage of justice exception to procedural

default is only available if the petitioner presents new and convincing evidence of her innocence

by showing that it is more likely than not that no reasonable juror would convict her in light of

the new evidence. *Schlup v. Delo*, 513 U.S. at 324. Cosby's actual innocence argument is based

on her interpretation of facts adduced at trial which were rejected by the finder of fact. It thus

does not excuse her procedural default.

### 4. Evidentiary Hearing

Cosby's habeas petition ends with a bald request for an evidentiary hearing under §

2254(e)(2) to develop the factual record concerning her ineffective assistance of counsel claims.

In general, this court's ability to hold an evidentiary hearing so a petitioner may supplement an

underdeveloped state court record is "severely circumscribed." *Boyko v. Parke*, 259 F.3d 781,

789-90 (7th Cir.2001); *see also Williams v. Taylor*, 529 U.S. 420, 437 (2000) (federal habeas

courts are not alternative forum for trying facts and issues that petitioner did not pursue in state court).

Thus, if a factual basis of a claim was not developed in the state court, a federal court "shall not hold an evidentiary hearing" unless the petitioner shows that: (1) her claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence; and (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

Because Cosby does not assert that a new rule of constitutional law is implicated, she must demonstrate that the failure to develop a factual record in the state court was not her fault. *See Williams v. Taylor*, 529 U.S. at 432. She must also point to facts sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would find her guilty of the underlying offense. *See* 28 U.S.C. § 2254(e)(2)(B). Because Cosby has failed to point to facts that satisfy this strict standard, she is not entitled to a federal evidentiary hearing.

## III. Conclusion

For the above reasons, Cosby's § 2254 petition [1-1] is denied.

DATE: 7-23-04

Blanche M. Manning
United States District Court Judge

04cv2077.hab

- 19 -